IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| ANDRA DEMOND HOUSE #1125026 | § | |
| v. | § | CIVIL ACTION NO. 9:11cv164 |
| TIMOTHY SIMMONS, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Andra House, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this lawsuit under 42 U.S.C. §1983 complaining of alleged deprivations of his constitutional rights. The lawsuit has been assigned to the docket of the undersigned United States Magistrate Judge for entry of final judgment pursuant to 28 U.S.C. §636(c). House names as defendants Warden Timothy Simmons, Lt. Shawn Grace, and the Polunsky Unit medical department; the medical department has been previously dismissed.

In his complaint and at an evidentiary hearing, House stated that he was restricted to One Row because he suffers from asthma, but on July 26, 2011, he was placed into pre-hearing detention on Two Row. The cell had no electrical outlet where he could plug in his fan. He told this to Lt. Grace, who replied that this was not his problem. House could not breathe and complained to the officers, but they told him that the medical department said that he did not have a One Row restriction when in fact he did. House remained on Two Row for 13 days.

House filed a Step One grievance and was told that he had a ground floor only restriction, and that the classification department concluded that he had been inappropriately housed but that steps had been taken to prevent this from happening again.

The Defendants Grace and Simmons have answered the lawsuit and filed a motion for summary judgment. House has filed a response to the motion.

In their motion for summary judgment, the Defendants acknowledge that House was low-row restricted as of June 14, 2011. On July 16, 2011, House had a pre-segregation health screening and then was taken to pre-hearing detention by Sgt. Grace. They assert that Grace simply took House to the pre-segregation screening by the medical department and then to the pre-hearing detention area, noting that the activity record reveals that it was Officer Clark, not Grace, who actually placed him in the cell. The Defendants state that Grace did not normally work in the segregation area and that he did not have any further contact with House after escorting him to the pre-segregation housing area. From July 27 to August 4, 2011, House's psychiatric and health status were evaluated with "no significant findings."

After setting out the summary judgment standards, the Defendants argue that they are entitled to Eleventh Amendment immunity to the extent that they are sued in their official capacities, and to qualified immunity from claims for damages in their individual capacities. They then contend that neither Simmons nor Grace was personally involved in any alleged constitutional violations.

In this regard, the Defendants argue that House claims that Warden Simmons "allowed me to be placed in a life threaten[ing] cell," but that as warden of the Polunsky Unit, Simmons was not directly involved nor have any influence in the housing assignments of prisoners, nor did he instruct anyone to place House in a cell on Two Row. Instead, he says, the housing assignments for inmates housed in pre-hearing detention are created by the sergeant, lieutenant, or major working in the segregation building and are based on cell availability and restrictions contained in the inmate's housing records.

Similarly, the Defendants say, Grace also lacks the requisite personal involvement. They again note that Grace did not work in the segregation building and did not have any involvement with what cell House would be assigned, reiterating that Grace did not actually escort House to the cell on Two Row but only brought him to the pre-hearing detention area.

Next, the Defendants contend that House has not shown deliberate indifference. First, they state that he failed to show that he was incarcerated under conditions posing a substantial risk of

serious harm. In his complaint, House said that he has asthma, he is one row restricted, and the cell on Two Row had nowhere to plug in his fan, which the Defendants contend are "conclusory statements" which fail to show unconstitutional conditions of confinement. The Defendants also state that the TDCJ Managed Care Solitary/Prehearing Flow Sheet shows that House had his psychiatric and health condition evaluated every day, and each day had "no significant findings." They argue again that the lack of personal involvement showed that they lacked the culpable mental state of deliberate indifference, stating that the medical staff told Grace that House did not have any housing restrictions. Finally, the Defendants argue that their actions were objectively reasonable.

<u>The Defendants' Summary Judgment Evidence</u>

The first item of summary judgment evidence is a "segregation confinement record." This record shows that House was placed in segregation on July 26, 2011, per Lt. Grace, and that he was placed in his cell (which was denoted as "clean") by Officer Clark. The record has "none" written in for special medical conditions or other medical conditions. An activity record shows that on August 2, 2011, House was taken for recreation at 6:28 a.m, and for a shower at 3:40 p.m. A property inventory form shows that House was allowed to keep certain items of personal property, including one medical item designed as a KOP (keep on person).

After several records of a prior assignment to segregation on June 1, 2011, the Defendants offer a health summary for classification form, dated June 14, 2011, in which a restriction of ground floor only was assigned.

Next, the Defendants provide the TDCJ Managed Care solitary / pre-hearing flow sheet. This shows that House was seen every day and has check marks under "psych status" and "health status." The form indicates that a check mark under "psych status" means that the inmate is alert and oriented as to person, place, and time, characteristics of appearance, behavior, and verbalization is appropriate to the situation, and his affect (emotional state) was appropriate. A check mark under "physical status" means that the patient has no complaints and no new trauma.

The second exhibit of summary judgment evidence consists of House's medical records. These records show that House was seen on July 26, 2011, for a pre-segregation health evaluation. His chronic conditions were listed as mild asthma and an inguinal hernia, but there was no alteration in mental status, significant injury, or patient complaint indicating a need for a higher level of triage or care at the time.

The Defendants next attach a flow sheet from House's previous stint in segregation in June and records from a medical visit on June 14, which visit resulted in the updated health summary for classification form including the ground floor restriction. The third and final item of summary judgment evidence attached by the Defendants is a copy of House's grievance concerning the incident, in which he was told that he did have a ground floor restriction and that steps had been taken to prevent this from happening again.

## House's Response to the Motion for Summary Judgment

In his response to the motion for summary judgment, House says that Grace failed to ensure his safety before placing him in pre-hearing detention. He says that Grace pat-searched him prior to taking him to the infirmary and found his asthma pump, and that at the infirmary, the nurse who examined him told Grace that House had asthma. House contends that Grace "failed to adhere to the warning" and that House was placed in a cell without electrical outlets or air ventilation. When he was released from pre-hearing detention, he filed his Step One grievance arguing that he had been placed in danger.

House argues that Grace knew that he had asthma but took it upon himself to put him into an "unsafe living area." He asserts that the Step One grievance concluded that "wrongdoing had occurred" and that corrective action was taken.

House states that he needs more time to discover the policy which must be followed when a prisoner is escorted to pre-hearing detention. He says that Grace and Simmons "are now snitching on each other and their other officials, officers, and agents now that they are behind the eight ball.

4

If other officers, officials or agents were guilty pursuant to this action, is not currently available to the plaintiff."

Finally, House argues that the grievance department's "admitting wrongdoing" is tantamount to an admission of guilt. He states that the response to his grievance "is sufficient to show that not only are the defendants are not entitled to qualified immunity, but as well that defendant Grace had knowledge of the risk can be proven through circumstantial evidence, such as by showing that the risk was so obvious that the official must have known about it."

## Legal Standards and Analysis

House's complaint is that Grace and Simmons were deliberately indifferent to his serious medical needs by having him housed for 13 days in a cell on Two Row when he was restricted to One Row, and by placing him in a cell in which he could not plug in his fan, which he needed for relief from his asthma.

Prison officials have a duty not to be deliberately indifferent to the safety of their inmates. Johnston v. Lucas, 786 F.2d 1254, 1260 (5th Cir. 1986); Jacquez v. Procunier, 801 F.2d 789, 792 (5th Cir. 1986). A showing of mere negligent indifference is not enough for a constitutional claim. Davidson v. Cannon, 474 U.S. 344 (1986).

In Davidson, the Supreme Court faced the issue of what constitutes deliberate indifference to an inmate's safety. There, an inmate named Davidson was threatened by another inmate, McMillian. Davidson sent a note to the Assistant Superintendent of the prison, Cannon. Cannon passed the note to a guard named James. James, however, left the note on his desk and later forgot about it. McMillian later assaulted Davidson, causing serious injuries.

The Supreme Court acknowledged that the Defendants' lack of due care resulted in serious injury, but held that the lack of due care alone did not approach the sort of abusive governmental conduct that the Due Process Clause was designed to prevent. The Court emphasized that negligence alone was insufficient to trigger the protections of the Fourteenth Amendment. Davidson, 474 U.S. at 347-48.

In <u>Farmer v. Brennan</u>, 511 U.S. 825, 114 S.Ct. 1970, (1994), the Supreme Court explained as follows:

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. ...
>
> But an official's failure to alleviate a significant risk which he should have perceived, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

<u>Farmer</u>, 511 U.S. at 837; *see* <u>Reeves v. Collins</u>, 27 F.3d 174, 176 (5th Cir. 1994).

The Fifth Circuit has explained that deliberate indifference is "an extremely high standard to meet." <u>Domino v. TDCJ-ID</u>, 239 F.3d 752, 756 (5th Cir. 2001). In the context of medical care, the Fifth Circuit has stated that to prove deliberate indifference, the plaintiff must show that the prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." <u>Domino</u>, 239 F.3d at 756.

In <u>Thayer v. Adams</u>, 364 Fed.Appx. 883, 2010 WL 445601 (5th Cir., February 4, 2010), the plaintiff William Thayer was scheduled for knee replacement surgery, but the procedure was halted because of an adverse reaction to medication. He received 23 staples in his knee and was remanded to the Ellis Unit. However, when he arrived there, he was assigned to a cell which was up a flight of stairs and given no blankets or sheets. He required the assistance of other inmates to reach the cell because he could not climb the stairs alone. Thayer spent a sleepless night cold and in pain; the next day, he went to the infirmary for treatment but was denied. Thayer asserted that he received "inadequate treatment or no treatment at all" between March 29 and April 3, 2005, and his pain medication was discontinued at the direction of Nurse Adams. Two other nurses, Flisowski and Gonzales, refused to help him on March 29. He was finally seen by another nurse on April 2, and this nurse changed Thayer's dressing called the doctor, who reinstated Thayer's pain medication.

When Thayer brought suit, Gonzales was never served, but Adams and Flisowski sought summary judgment, asserting *inter alia* their entitlement to qualified immunity. They said that Thayer had originally been prescribed Tylenol #3, which had to be picked up from the pill window, but that a physician named Dr. Glenda Adams (not the defendant Nurse Mary Adams) changed this medication to Motrin, which did not have to be picked up from the pill window. The defendants argued that they were entitled to qualified immunity because they had no personal involvement with changing his prescription, his cell assignment, or his not receiving blankets and sheets.

The district court granted the motion for summary judgment, and Thayer appealed. On appeal, the Fifth Circuit held that Thayer had not shown that the defendants acted with deliberate indifference to his serious medical needs because Nurse Adams had no personal involvement with his complaints and Flisowski and Gonzales had no authority to prescribe drugs or embark on a different course of treatment than that which was prescribed. The Fifth Circuit thus affirmed the judgment of the trial court.

In the present case, the summary judgment evidence shows that Lt. Grace ordered House's assignment to pre-hearing detention, but that Officer Clark actually took him to his assigned cell; the documents show that Lt. Grace did not assign the cell or escort House to it, but simply took him to 11 Building, the segregation housing area, and put him in the custody of the officers who worked there. As in Thayer, Lt. Grace lacked any personal involvement with House's cell assignment.

Even assuming that Grace was the officer who took House to the cell, as the Plaintiff alleges, House has nonetheless failed to show deliberate indifference. Whether or not his pleadings and testimony may indicate that Grace *should have* perceived a significant risk, the Supreme Court made clear in Farmer that such a showing was not tantamount to deliberate indifference. In order to prevail, House must demonstrate that Grace was both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and that he drew this inference. House has made no such showing.

While House argues that Grace knew that he had asthma, as evidenced by the fact that Grace found his inhaler and was present in the infirmary during the pre-segregation physical, the medical records demonstrate that House was cleared for placement in segregation by the medical department. This is shown by the pre-segregation note which concluded that House had no alteration in mental status, significant injuries, or patient complaint indicating a need for a higher level of triage or care. The form contains a box, which was *not* checked, reading "if applicable, state reason(s) segregation is inappropriate for plaintiff at this time." The fact that Grace was present in the infirmary when he was examined, as House says, indicates that Grace knew that House had been cleared by the medical department for placement in segregation. Grace had no duty to make an independent medical determination that House was unfit for housing in segregation, but was entitled to rely on the judgment of the medical department. *See* Miltier v. Beorn, 896 F.2d 848, 854-55 (4th Cir. 1990) (prison officials are entitled to rely on the expertise of prison medical staff with respect to inmate's treatment); Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995) (warden and medical administrator lacked medical expertise and cannot be liable for diagnostic decisions of the medical staff); *accord*, Althouse v. Roe, 542 F.Supp.2d 543, 579 (E.D.Tex. 2008, appeal dismissed); Cooks v. Demerson, slip op. no. 2:10cv0195, 2011 WL 4485920 (N.D.Tex., September 28, 2011, no appeal taken).

Furthermore, House has not shown that he suffered any harm as a result of his placement in the cell. A review of the certified medical records offered into evidence at the hearing reveals no indication that House suffered any ill effects from his placement in the cell. He was seen at sick call on August 9, 2011, just a few days after his release from Two Row, with complaints that he had a bump on the back of his neck for the past five months and that he had a burning in his throat since he drank "contaminated water" about four weeks earlier. There was no mention of any problems related to his confinement in the cell.

On August 22, 2011, House was again seen at sick call, with a complaint that he had suffered bouts of dizziness for some 10-15 years, with the episodes coming two to three times a week. He

also complained of problems with stomach gas. A urinalysis was taken, which proved normal. On September 9, 2012, House was seen by Dr. Nguyen at sick call, where he said that he was still having urinary problems but was not worried about them, and declined the offer of a rectal exam. Dr. Nguyen observed that House had recently put in a sick call request concerning allergies and dry skin. No mention was made of any problems relating to the cell conditions at either of these visits with medical personnel.

The sick call requests which House filed over this time period also make no mention of any problems related to his placement in the segregation cell. A sick call received by the medical department on August 3, 2011, states that "I have a bump, or blood clot on the back of my neck and it hurts." He gave his living quarters as "11-30," which is the segregation cell about which House complains. In another sick call request, also received by the medical department on August 3, House complains of the bump on the back of his neck and says that he is still feeling "messed up" after drinking the "contaminated water." A sick call request received on August 9 reads as follows: "The staff wasn't calling me in for any of my sick call requests. Sharon Lawrence, R.N., CNM is the one that's getting my requests. Which I am still feeling messed up from that contaminated water, and still have this lump on my neck too." This sick call request, like the others, gives House's living quarters as cell 11-30.

Thus, the medical records show that House filed no fewer than three sick call requests while confined in the cell about which he complained, but none of these made any mention of being unable to breathe or his asthma being otherwise aggravated by the conditions of confinement in his segregation cell. In King v. Kilgore, 98 F.3d 1338, 1996 WL 556845 (5th Cir., September 9, 1996), the plaintiff complained that a denial of medical care prolonged his asthma attack and caused him pain, suffering, and discomfort; however, the Fifth Circuit affirmed the dismissal of the complaint, holding that the plaintiff "has not alleged facts showing that he experienced substantial harm due to the delay."

Similarly, House has not alleged, much less shown, that he suffered any substantial harm as a result of the cell conditions of which he complains. The summary judgment evidence shows that daily checks were conducted with no complaints voiced, House filed three sick call requests while in the cell without mentioning asthma or breathing difficulties, and he saw medical personnel after his release from the cell with other complaints, but said nothing about respiratory problems. Because House did not show that he suffered any substantial harm as a result of the conditions complained of, his claim fails on this basis as well. *See also* Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993) (delay in obtaining medical treatment for a serious medical need is only an Eighth Amendment violation if there is deliberate indifference resulting in substantial harm).

The Fifth Circuit has explained that indicia of confinement constituting cruel and unusual punishment include wanton and unnecessary infliction of pain, conditions grossly disproportionate to the severity of the crime warranting imprisonment, and the deprivation of the minimal civilized measures of life's necessities. Wilson v. Lynaugh, 878 F.2d 846, 848 (5th Cir.), *cert. denied* 493 U.S. 969 (1989). The Supreme Court has held, however, that to the extent that prison conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. Rhodes v. Chapman, 452 U.S. 337, 346-7 (1981).

The Rhodes Court held that any Eighth Amendment analysis must look to the evolving standards of decency that mark the progress of a maturing society, but cautioned that the standards are derived from objective factors. Rhodes, 452 U.S. at 346. In compliance with the Supreme Court's opinion, the Fifth Circuit has stated that the Eighth Amendment does not afford protection against mere discomfort or inconvenience. Wilson, 878 F.2d at 849.

In this case, House has not shown that he suffered anything more than "discomfort or inconvenience." He was placed in a hot cell with no place to plug in his fan, which undoubtedly resulted in some discomfort, but he filed no sick call requests regarding his asthma while in the cell and made no complaints to medical personnel about the conditions of confinement after his release from the cell.

In Davis v. Scott, 157 F.3d 1003, 1004 (5th Cir. 1998), the plaintiff was placed in a cell which he described as "just filthy," with "blood on the walls and excretion on the floors and bread loaf on the floor." The Fifth Circuit affirmed the dismissal of the lawsuit, holding that the plaintiff did not suffer an extreme deprivation of any minimal civilized measure of life's necessities; the court noted that the plaintiff never alleged any physical injury as a result of his confinement in the cell.

Likewise, House has not shown that he suffered a deprivation of the minimal civilized measures of life's necessities. The confiscation of an electrical cord, depriving an inmate of the use of a fan in his cell, does not violate the Eighth Amendment absent a showing that the cell ventilation was so inadequate as to fall below the minimal civilized measure of life's necessities. Ingram v. Jewell, 94 Fed.Appx. 271, 2004 WL 619428 (6th Cir., March 24, 2004); *accord*, Christ v. Hartley, civil action no. 1:11cv705, 2013 WL 127737 (E.D.Cal., January 9, 2013), *Report adopted at* 2013 WL 663314 (E.D.Cal., February 21, 2013) (no constitutional violation in denying inmates possession of electrical appliances which plug into wall outlets). Although he says that Grace told him "that's not my problem" when House complained about the lack of outlets, this comment - however intemperate - does not show that Grace was deliberately indifferent to his safety or medical needs.

House argues that the response to his grievance proves deliberate indifference, but this contention is without merit. This response simply says that "the classification department was contacted regarding this issue and they conclude you were inappropriately housed at that time, but steps have been taken to prevent this from happening again." It is not disputed that House had a One Row restriction and his placement on Two Row was in error. However, the fact that a mistake was made in assigning House to Two Row does not show that any prison officials were deliberately indifferent to House's safety or medical needs. Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991) (mistake in judgment did not amount to deliberate indifference); Perkins v. Texas Department of Criminal Justice, 127 Fed.Appx. 142, 2005 WL 756450 (5th Cir., April 4, 2005) (error in giving inmate medication to which he had a known allergy was not deliberate indifference despite severe reaction which resulted). House has not shown that Grace was deliberately indifferent to his safety

11

or that House suffered substantial harm as a result of his placement in this cell. Even assuming that Grace rather than Clark escorted House to the cell in lockup, his claim against Grace is without merit.

House does not allege that Warden Simmons was personally involved with his placement in segregation or that the warden even had knowledge of the incident. Instead, he says in his complaint that Grace was "following the procedure set forth by Warden Timothy Simmons." House does not identify the precise policies or procedures of which he complains, nor show how any such policies and procedures resulted in a constitutional violation.

The Fifth Circuit has explained that lawsuits against supervisory personnel based on their positions of authority are claims of liability under the doctrine of *respondeat superior*, which does not generally apply in Section 1983 cases. Williams v. Luna, 909 F.2d 121 (5th Cir. 1990). A supervisor may be held liable if there is personal involvement in a constitutional deprivation, a causal connection between the supervisor's wrongful conduct and a constitutional deprivation, or if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind a constitutional deprivation. Thompkins v. Belt, 828 F.2d 298 (5th Cir. 1987).

In this case, House has not shown that Warden Simmons was personally involved in a constitutional deprivation, nor that wrongful conduct by Simmons was causally connected to a constitutional deprivation. House made a vague and conclusory allegation that Lt. Grace was "following the procedures set forth by Warden Timothy Simmons," but fails to show that such procedures were so deficient as to amount to a repudiation of his constitutional rights, much less that these procedures were the moving force behind a constitutional deprivation. He has shown no basis for liability on the part of Warden Simmons.

## Immunity

The Defendants contend that they are entitled to the defenses of Eleventh Amendment immunity as to claims for monetary damages brought against them in their official capacities and

qualified immunity as to claims brought against them in their individual capacities. To the extent House seeks damages from the Defendants in their official capacities, the Defendants are entitled to Eleventh Amendment immunity. Hafer v. Melo, 112 S.Ct. 358, 363 (1991); Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002) (noting that the Fifth Circuit has "twice held that the Eleventh Amendment bars recovering §1983 money damages from TDCJ officers in their official capacity.")

The defense of qualified immunity applies to claims brought against government officials in their individual capacities. The Fifth Circuit has stated that the qualified immunity defense serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's actions were reasonable in light of then clearly existing law. Atteberry v. Nocona General Hospital, 430 F.3d 245, 253 (5th Cir. 2005), *citing* Thompson v. Upshur County, 245 F.3d 447, 456 (5th Cir. 2001). In this regard, the Fifth Circuit has explained that even if the official's conduct violated a clearly established constitutional right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable. Jones v. Collins, 132 F.3d 1048, 1052 (5th Cir. 1998).

After the defendant properly invokes qualified immunity, the plaintiff bears the burden to rebut its applicability. Tolan v. Cotton, 713 F.3d 299, 304 (5th Cir. 2013) *citing* McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002). In order to abrogate a public official's right to qualified immunity, the plaintiff must show the official's conduct violated a constitutional or statutory right and the official's actions constituted objectively unreasonable conduct in the light of clearly established law at the time of the conduct in question. Tolan, 713 F.3d at 304, *citing* Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir. 2008). In other words, when the defendant moves for summary judgment based on qualified immunity, it is the plaintiff's burden to demonstrate that all reasonable officials similarly situated would have then known the alleged acts of the defendant violated the Constitution. Stevenson v. Young, slip op. no. 12-60138, 2013 WL 1152046 (5th Cir., March 19, 2013), *citing* Thompson v. Upshur County, 245 F.3d 447, 460 (5th Cir. 2001).

In this case, House has failed to meet his burden to rebut the applicability of the defense of qualified immunity. His response to the motion for summary judgment argues that the answer to his grievance rebuts the qualified immunity defense, but this contention is incorrect; the answer to his grievance merely acknowledges that an error was made, not that anyone acted in an objectively unreasonable manner. The fact that a mistake was made does not itself overcome the qualified immunity defense absent a showing of objectively unreasonable conduct. Newton v. Black, 133 F.3d 301, 308 (5th Cir. 1998); Pearson v. Callahan, 555 U.S. 223, 231 (2009). House has not shown that Lt. Grace or Warden Simmons violated any clearly established constitutional or statutory rights, nor that the Defendants' actions were objectively unreasonable in light of clearly established law. The motion for summary judgment should be granted on this basis as well.

## Conclusion

On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Securities and Exchange Commission v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1994); General Electric Capital Corp. v. Southeastern Health Care, Inc., 950 F.2d 944, 948 (5th Cir. 1992); Rule 56(c), Fed. R. Civ. P.

To avoid summary judgment, the non-moving party must adduce admissible evidence which creates a fact issue concerning existence of every essential component of that party's case; unsubstantiated assertions of actual dispute will not suffice. Thomas v. Price, 975 F.2d 231, 235 (5th Cir. 1992), *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Fifth Circuit has stated that once the moving party has met its burden, the non-movant must direct the court's attention to admissible evidence in the record showing that it can satisfy a fair-minded jury that it is entitled to a verdict in its favor. ContiCommodity Services, Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995).

Although the Court must draw all inferences in favor of the party opposing the motion, an opposing party cannot establish a genuine issue of material fact by resting on the mere allegations of the pleadings. Hulsey v. State of Texas, 929 F.2d 168, 170 (5th Cir. 1991); *see also* Gordon v. Watson, 622 F.2d 120 (5th Cir. 1980) (litigants may not oppose summary judgment through unsworn materials). Similarly, a bald allegation of a factual dispute is insufficient, in itself, to create a genuine issue of material fact. Recile, 10 F.3d at 1097 n.15. A non-movant cannot manufacture a factual dispute by asking the Court to draw inferences contrary to the evidence. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In short, a properly supported motion for summary judgment should be granted unless the opposing party produces sufficient evidence to show that a genuine factual issue exists. Hulsey, 929 F.2d at 170, *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Fifth Circuit has stated that once the defendants have shifted the burden to the plaintiff by properly supporting their motion for summary judgment with competent evidence indicating an absence of genuine issues of material fact, the plaintiff cannot meet his burden by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The Court added that "summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant." Little, 37 F.3d at 1075.

The fact that a non-movant failed to respond to a motion for summary judgment is not itself a basis for granting that motion; rather, the movant has the initial burden of proof to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law. John v. State of Louisiana Bd. of Trustees for State Colleges and Universities, 757 F.2d 698, 708 (5th Cir. 1985). Once the movant has done so, the burden then shifts to the plaintiff, who must identify specific evidence in the record and articulate the precise manner in which that evidence supports his claims; the district has no duty to sift through the record in search of evidence to support a party's

opposition to summary judgment. Stults v. Conoco, Inc., 76 F.3d 651, 656 (5th Cir. 1996). As for material facts on which the plaintiff will bear the burden of proof at trial, he must come forward with evidence sufficient to enable him to survive a motion for directed verdict at trial. Stults, 76 F.3d at 656; *see also* Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim).

In this case, the pleadings and the summary judgment evidence show that there are no disputed issues of material fact and that the Defendants are entitled to judgment as a matter of law. It is accordingly

ORDERED that the motion for summary judgment of the Defendants Warden Simmons and Lt. Grace (docket no. 51) is hereby GRANTED. It is further

ORDERED that the claims against these Defendants are hereby DISMISSED with prejudice. Because all of the claims and Defendants in this lawsuit have now been dismissed, it is further

ORDERED that this lawsuit is DISMISSED in its entirety. Any and all motions which may be pending in this cause are hereby DENIED.

So **ORDERED** and **SIGNED** this **29** day of **May, 2013.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE